DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**ESPERANZA ROBELTO** and **YONIS ROBELTO,**
Appellants,

v.

**U.S. BANK TRUST, N.A., AS TRUSTEE FOR LSF8 MASTER
PARTICIPATION TRUST,**
Appellee.

No. 4D14-4721

[May 4, 2016]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; John Bowman, Judge; L.T. Case No. CACE08-007543.

Mauricio Garcia of Law Offices of Mauricio Garcia, P.A., Sunrise, for appellants.

Heidi J. Bassett and Robert R. Edwards of Robertson, Anschutz & Schneid, P.L., Boca Raton, for appellee.

WARNER, J.

Homeowners challenge the trial court's final judgment of foreclosure, contending that the appellee failed to prove the necessary elements to reestablish a lost note. The evidence proved that the note was last in possession of Wells Fargo, but the appellee did not establish Wells Fargo's possession or, if it had possession, its connection to the appellee or its predecessors in title. We agree the appellee did not establish the requirements to reestablish the lost note and reverse.

HSBC Mortgage Services filed a mortgage foreclosure proceeding against Homeowners in 2008 based upon the homeowners' default on the promissory note. Attached to the complaint were exhibits, including a copy of the mortgage showing Delta Funding Corporation as the lender and a promissory note with a blank endorsement from Delta Funding. The complaint alleged that HSBC owned the note. Five years after filing the complaint, HSBC moved to amend to include a count for reestablishment of the note pursuant to section 673.3091, Florida Statutes (2008). It attached a lost note affidavit in which the affiant, a representative of

HSBC, testified that HSBC was in possession of the note prior to it becoming lost. In March 2014, HSBC withdrew its motion for leave to amend, and ultimately the case proceeded to trial, at which the court declared a mistrial when the note was not produced.

Later, U.S. Bank Trust, N.A., as Trustee for LSF8 Master Participation Trust, was substituted as the party plaintiff in place of HSBC. U.S. Bank filed a Verified Second Amended Complaint for Foreclosure and included a count to reestablish a lost note. The same copy of the note as attached to the original complaint was attached to the amended complaint. Homeowners answered, raising affirmative defenses, and the case was reset for trial.

At trial, a representative from Caliber Home Loans was the only witness to testify. She testified that Caliber was the current loan servicer for the appellee, U.S. Bank. The representative testified that as a default service officer, her responsibility was to "research historical business records and documents pertaining to loans that are currently in litigation." She explained the boarding process for the loan. She then testified regarding the lost note, reading from the "Affidavit of Lost Note" over Homeowners' objection that she lacked personal knowledge. She did not testify that she searched for the lost note; instead she explained that the affidavit "indicat[ed]" that the files of Wells Fargo had been searched, and the note was not found. The affidavit indicated that Wells Fargo was the usual place of storage of the note, although there was no testimony as to why it would be held there. Referring to the affidavit, the representative testified that the note was lost while in possession of Wells Fargo, prior to Caliber taking over the servicing of the loan. There was no testimony as to the relationship between Wells Fargo and any other entity involved in this case, including HSBC. The Caliber representative did not expressly testify that Wells Fargo was a servicer of the loan. She said that the affidavit indicated that Wells Fargo was a prior servicer, even though the affidavit did not state that Wells Fargo was a servicer. Later, she testified that HSBC and Caliber were the only servicers of the loan.

The representative was asked whether she knew that the prior servicer (without identifying who the servicer was) had possession of the note when suit was filed in 2008. At first she said she did not, and then responded, "I *believe they* did." (Emphasis supplied). She was then asked, "What do you base that on?" She responded, "The filing of the complaint. . . . The fact that they were able to file the complaint would indicate that they were the holder of the note." The defense objected to this testimony, because the witness was not testifying to something within her knowledge. The court overruled the objection.

2

Through the representative, two copies of the lost note were introduced. The first, filed with the original complaint, had a blank endorsement from Delta Funding, the original lender. The second, attached to the affidavit of lost note, had two allonges, the first of which showed a transfer of the loan from HSBC to U.S. Bank, as trustee. A representative of Caliber Home Loans signed as attorney-in-fact for HSBC. The second allonge was endorsed in blank from U.S. Bank and also signed by a representative of Caliber Home Loans as attorney-in-fact for U.S. Bank. Both of the allonges had Caliber document numbers on them and were signed by Caliber officers. Thus, these allonges could not have been created prior to Caliber becoming servicer for the loan and thus must have been created after the note was lost.

Although the Bank's counsel stated that he was not attempting to admit the affidavit of lost note, it was attached as Plaintiff's Exhibit 1. The affidavit states, "The Plaintiff acquired ownership of the Original note from Household Finance, Inc., as indicated from the attached business records." The only records attached were the note and the allonges described above, none of which mention Household Finance.

The representative also referred to a document which she said was part of the business records at the time Caliber took over servicing of the loan. Exhibit 3 is a "waybill," with an HSBC logo and address on it, to the attention of Marshall Watson, whose law firm filed the original complaint. It states that "enclosed for the following accounts . . . are notes and mortgages." Four of the account numbers for files are printed on the waybill, but the account number for the file of the homeowners in this case was handwritten. The waybill had a printed date prior to the filing of suit in this case. No other testimony was presented as to when the handwritten entry on the waybill was entered or who entered it. Being a representative of Caliber which only acquired the servicing of the loan in 2013, the witness had no knowledge of any of the entries on the document.

After admitting payment histories and other documents, U.S. Bank rested, and Homeowners moved for involuntary dismissal for failure to prove either the reestablishment of the lost note or standing of HSBC at the initial filing of the complaint. The court denied the motion and ultimately entered a judgment reestablishing the note and foreclosing on the mortgage. This appeal followed.

"A finding that a lost note is reestablished under 673.3091, Florida Statutes is reversible upon the appellate court determination of a failure of proof." *Seidler v. Wells Fargo Bank, N.A.*, 179 So. 3d 416, 417 (Fla. 1st DCA 2015). We review the denial of a motion for involuntary dismissal de

3

novo.  *Ensler v. Aurora Loan Servs., LLC*, 178 So. 3d 95, 97 (Fla. 4th DCA 2015).

Section 673.3091, Florida Statutes, establishes the requirements to enforce a lost note:

> A person not in possession of an instrument is entitled to enforce the instrument if:
>
> (a) The person seeking to enforce the instrument was entitled to enforce the instrument when loss of possession occurred, or has directly or indirectly acquired ownership of the instrument from a person who was entitled to enforce the instrument when loss of possession occurred;
>
> (b) The loss of possession was not the result of a transfer by the person or a lawful seizure; and
>
> (c) The person cannot reasonably obtain possession of the instrument because the instrument was destroyed, its whereabouts cannot be determined, or it is in the wrongful possession of an unknown person or a person that cannot be found or is not amenable to service of process.

§ 673.3091(1), Fla. Stat. (2008).  In addition, the person seeking to enforce the note must prove the terms of the note and provide security to the obligor in the event some other person seeks to enforce the note. § 673.3091(2), Fla. Stat.

U.S. Bank's case completely fails on the first requirement.  It did not prove that it had acquired the note from a person entitled to enforce the note when loss of possession occurred.  A person entitled to enforce the note is: (1) The holder of the instrument; (2) A nonholder in possession of the instrument who has the rights of a holder.  § 673.3011, Fla. Stat. (2008).  The representative testified that Wells Fargo was in possession of the note when loss of possession occurred.  No evidence explained how Wells Fargo had acquired possession of the note or whether it was a holder or a non-holder with rights of a holder.  If Wells Fargo was a servicer, no testimony explained for whom Wells Fargo was servicing the loan.[1]

---

[1] The answer brief states that the representative testified that Wells Fargo had serviced the loan for HSBC since its inception.  The citation to the record shows that this is a misstatement.  The *record* shows that she testified that *HSBC* was the servicer of the loan from its inception.

The representative stated that the "prior loan servicer" had possession of the note when the case was filed, but she only "believed" that because the complaint was filed. She had no personal knowledge of this, and thus her testimony is solely based upon any business records which might show possession. The waybill showed not that Wells Fargo was in possession, but that HSBC was in possession and transferred it to its attorney, not Wells Fargo.

Because there was no proof of the connection between HSBC and Wells Fargo, there is no evidence of who was entitled to enforce the note at the time possession was lost.[2] If HSBC owned and possessed the note at the time it filed suit, there is no explanation of how Wells Fargo acquired the note. Admitted in evidence was a copy of an allonge, obviously created after Caliber began servicing the loan,[3] purporting to transfer the now-lost note from HSBC to U.S. Bank, but there is no reference to Wells Fargo on either allonge.

Moreover, even if we were to suppose that Wells Fargo somehow was a servicer and in the chain of title, the evidence is insufficient to show the chain of transfers through the two allonges. They purport to show first a transfer from HSBC to U.S. Bank and then a blank endorsement from U.S. Bank. However, both are signed by a representative of Caliber, and there is nothing in the record to show by what authority Caliber could make either assignment. At best, it might be inferred that Caliber was the servicer for U.S. Bank. But no servicing agreements were entered to show that Caliber had authority from HSBC to act as its attorney-in-fact to assign the loan to U.S. Bank. There is simply no competent evidence to

---

[2] The amended complaint to reestablish a lost note filed by HSBC alleged that it was in possession of the note when it was lost, thus contradicting the representative's testimony at trial.

[3] Although not argued by the appellant, these do not appear to meet the definition of an allonge, which is "a piece of paper annexed to a negotiable instrument or promissory note, on which to write endorsements for which there is no room on the instrument itself. Such must be so firmly affixed thereto as to become a part thereof." *See Booker v. Sarasota, Inc.*, 707 So. 2d 886, 887 n.1 (Fla. 1st DCA 1998) (quoting Black's Law Dictionary 76 (6th ed. 1990)). These could not have been attached to the note if the note was lost before Caliber began servicing the loan. This is not to say, however, that the loan could never be assigned so as to prevent a defendant from receiving a windfall in a foreclosure case. *See Slizyk v. Smilak*, 825 So. 2d 428 (Fla. 4th DCA 2002). However, here, unlike the facts in *Slizyk,* the person in possession of the note when lost, i.e. Wells Fargo, never assigned the notes, and the allonge executed by Caliber could not be considered a valid assignment.

support a finding that U.S. Bank acquired the note from a person who had the right to enforce it when the note was lost.

The representative's testimony was woefully inadequate to prove whose possession the note was in when it was lost, and whether that person or entity was a holder or had the rights of a holder. The representative contradicted herself and the documents by which she attempted to prove the elements of possession and authority. She obviously had no knowledge of what had happened to the note because she simply read from the affidavit of lost note.

Because U.S. Bank failed to prove all the elements of the cause of action, the court erred in entering judgment for it to reestablish the lost note. Without that, the foreclosure could not be granted. *See Guerrero v. Chase Home Fin., LLC*, 83 So. 3d 970 (Fla. 3d DCA 2012). We do not reverse for further proceedings, as the court did in *Guerrero,* because here U.S. Bank had pled to reestablish the note and simply failed in its proof. It is not entitled to a second bite at the apple. We thus reverse for entry of judgment for the homeowners.

CIKLIN, C.J., and KLINGENSMITH, J., concur.

\* \* \*

***Not final until disposition of timely filed motion for rehearing.***